UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HON. LAWRENCE J. O'NEILL

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 1:08-cr-254  LJO |
| Plaintiff, ) | |
| ) | MOTION TO QUASH and |
| vs. ) | STATUS CONFERENCE |
| ) | |
| ALEJANDRO ORTEGA, ) | |
| ) | |
| Defendant. ) | |
| ———————————————— ) | |

Fresno, California             Friday, March 6, 2009

REPORTER'S TRANSCRIPT OF PROCEEDINGS

REPORTED BY:  CONNIE SILVA, CSR NO. 11460

```
APPEARANCES OF COUNSEL:


For the Government:      United States Attorney's Office
                        2500 Tulare Street
                        Room 4401
                        Fresno, California  93721
                        BY:  KAREN ESCOBAR
                        Assistant U.S. Attorney

For the Defendant:      Federal Defender's Office
                        2300 Tulare Street
                        Suite 330
                        Fresno, CA  93721
                        BY:  MARC DAYS
                        Assistant Federal Defenders

For the City of
Fresno:                 Office of the City Attorney
                        2600 Fresno Street
                        Suite 2031
                        Fresno, CA  93721
                        BY:  MELISSA L. WHITE
                        Assistant City Attorney


The Interpreter:        Susana Suaya
```

1    Friday, March 6, 2009                    Fresno, California

2

3

4          THE COURT:  Call the case of United States versus

5    Ortega, Number 254.

6          MR. DAYS:  Good morning, your Honor, Marc Days

7    for Mr. Ortega who is present in court.  He's being

8    assisted by a Spanish language interpreter.

9          THE COURT:  Okay.

10         MS. WHITE:  Melissa White on behalf of the City

11   of Fresno, your Honor.

12         MS. ESCOBAR:  Karen Escobar appearing for the

13   Government.

14         THE COURT:  All right.  This is on pursuant to a

15   Rule 17 subpoena that was issued and served on the City

16   of Fresno and Ms. White is here on behalf of the City

17   of Fresno in response to that Rule 17 subpoena.

18         I have received and reviewed the City's Motion

19   to Quash the defendant's subpoena, also the Government's

20   motion to seal the motion, and then yesterday I received

21   the opposition that was filed ex parte and under seal by

22   the defense.  The reason for the sealing of the defense

23   ex parte response was because it's Mr. Days' position that

24   it includes some of the theories by which, and strategies

25   by which the Defendant is going to be defendant.  And I

1    suppose I have a preliminary question.  Some of the issues

2    that are -- back up, before I ask that question.

3            Is the strategy that you are most concerned about

4    really a secret?

5            MR. DAYS:  Some parts aren't and some parts are.

6    In particular, the way that the defense views the value

7    of the information and how we intend on using the

8    information.

9            THE COURT:  What part of the theory are you

10   willing to share?

11           MR. DAYS:  I would be willing to share those

12   parts of the theory that were part of the defense's

13   supplemental motion, discovery motion filed on December

14   the 24th.

15           THE COURT:  Could you be more specific?  The

16   reason, I don't want to make a mistake, since I read them

17   both and I'm not sitting here comparing both of them, I

18   don't want to make a mistake because if I make one with

19   an assumption that it is all right to divulge, then I

20   can't get it back.

21           MR. DAYS:  I appreciate that, absolutely.  We

22   don't think it's a secret of any sort that it's our

23   position that the officers and confidential informant

24   stole Mr. Ortega's vehicle.

25           THE COURT:  Fine, that's all I need.  I don't

1    need anymore than that.

2          MS. ESCOBAR:  Your Honor, however, from our

3    perspective he can certainly waive his deliberate and

4    processed privilage, work product privilege that sort of

5    thing, but I think from the Government's perspective the

6    litigation of the impeachability or 40(b) potential of

7    a material is not something --

8          THE COURT:  I'll get there.  I know where you're

9    going and I'll get there.  And I understand, I understand

10   that.

11         MS. ESCOBAR:  I think there's a privacy right at

12   issue.

13         THE COURT:  There are lots of issues here --

14         MS. ESCOBAR:  Right.

15         THE COURT:  -- and we'll get to them.  We just

16   need to peel the onion just one layer at a time.

17         MR. DAYS:  Your Honor, one thing, it is our

18   position that the U.S. attorney may not have a dog in

19   this fight, that the U.S. attorney does not have standing,

20   and that's not to say that there may be some standing;

21   however, there's been no showing.  It's our position the

22   Government has a burden to show what it is as far as the

23   basis for which they have a standing.  I can't imagine

24   any, but maybe there is some.

25         THE COURT:  I think this, I don't think the

```
 1    government, I'm talking about the federal government,

 2    the U.S. Attorney's office has standing to fight the

 3    subpoena, that's the City's fight; however, the reason

 4    it's important to have them here is because they are

 5    involved with certain matters that may be a prerequisite

 6    to your getting the information and so she's here for,

 7    frankly, informational purposes as much as anything else,

 8    and I understand what you're saying.

 9            MR. DAYS:  I can appreciate that point.

10            THE COURT:  All right.  The City is willing to

11    provide, from my reading, numbers one through four and six

12    through eight.

13            MS. WHITE:  That's correct, your Honor.

14            THE COURT:  And the dispute then is five, and

15    then nine through seventeen.  Number five is the towing

16    policy.  And under ordinary circumstances, and this is

17    no ordinary circumstance, obviously, the position of the

18    defense, as stated, is that the informant and the officers

19    set this matter up to steal the car.  And the inference

20    I'm drawing, and this isn't the Defendant's position

21    necessarily, maybe, but the inference I'm drawing from

22    that position and possibilities include such a thing as,

23    did they make this up so that they could get the car and

24    steal it and do whatever they were going to do, operate

25    a chop shop, with regard to the car.  That's not the
```

1    ordinary circumstance we have, obviously, that the

2    investigating officers are not generally accused of

3    criminal activity involving the existence of the

4    Defendant's presence.  And so if it is a setup situation

5    or an entrapment situation, either one of those

6    situations, that may come into play, then more is relevant

7    than in the ordinary case.  So my question is:  The

8    Defendant knows that there's a tow policy, this isn't

9    just wild discovery, fishing expedition, they know that

10   there's a policy.  I'm assuming, and he's not told me

11   this, but I'm assuming that what they're trying to show

12   on the defense side is there's a policy that it has not

13   been, it was not followed in this case and that it is

14   evidence to indicate that this, it further indicates that

15   it was a setup or entrapment.  So you, Ms. White, while

16   you responded to the policy of the department on how to

17   handle confidential informant issues, and I understand

18   the delicacy of that, what's the delicacy of the towing

19   policy?

20        MS. WHITE:  Just that it's not released by the

21   agency unless there's a showing of a type of relevancy

22   that's -- actually, I didn't know what his actual offer

23   of proof was until I walked into court this morning as

24   to what that relevancy would be as to this case, in a

25   narcotics case the towing policy, but after hearing the

1    ex parte motion that was filed and the disclosures that

2    have been brought forth today, I don't think that there is

3    that issue anymore as to the relevancy of this particular

4    matter and in this limited situation and to limit it to

5    this particular case, the City is not going to have an

6    objection to that disclosure.

7          THE COURT:  All right, then, that part of the

8    motion is denied, with the understanding that what

9    you're just asking for is a protective order and --

10          MS. WHITE:  That's exactly what I have and I

11    would like to have that, anything that's presented in

12    this matter that that would be utilized.

13          THE COURT:  I understand.  And you brought that

14    up in your motion and I agree with that.  And I think you

15    have agreed, and that's no secret, that you have agreed

16    in your opposition that anything that's turned over or

17    ordered turned over will be done pursuant to a protective

18    order not to be shared with anyone other than you, of

19    course, and anybody who needs to know from an expert

20    standpoint on your case in chief -- excuse me, your

21    defense case.

22          MR. DAYS:  As well as my investigator, your

23    Honor?

24          THE COURT:  Including your investigator, but with

25    the understanding that your investigator is subject to the

1   court order.

2          MR. DAYS:  Understood.

3          THE COURT:  Okay.  That takes care of number

4   five.  On number nine and ten, these are for all documents

5   which verify the receipt of possession of money for the

6   purpose of conducting an undercover drug investigation,

7   which concerns the Defendant, that's number nine.

8          Number ten is policies and procedures in effect

9   for obtaining money for the purpose of conducting an

10  undercover drug investigation.

11         Those appear to me to be fishing expeditions,

12  specifically.  And I don't mean to use the term "fishing

13  expedition" in a negative sense, I'm actually talking

14  about discovery, and that's precluded under the Bowman

15  Dairy Case at 341 U.S. 214.  Do you wish to be heard

16  further on those?

17         MR. DAYS:  Yes.  Your Honor, as I stated earlier,

18  it's our position that the vehicle was stolen.  We believe

19  it was stolen because that was a form of compensation

20  to the confidential informant.  There have been media

21  reports that indicate that this has happened as well with

22  other confidential informants utilized by this unit, on

23  that basis we don't believe it's a fishing expedition,

24  based on the underlying predicate that the vehicle was

25  stolen to compensate the confidential informant if there's

1    no agreement to compensate the confidential informant.

2    What we're asking for would be a 404(b) evidence of motive

3    to steal the vehicle.

4            THE COURT:  But you're still asking for discovery

5    and that's --

6            MR. DAYS:  Well --

7            THE COURT:  -- and I understand that.

8            What you're arguing is relevance and it may well

9    be relevant, but --

10           MR. DAYS:  I think it goes towards the

11   admissibility because we believe the vehicle was stolen.

12   We believe it was stolen because it was compensation for

13   the CI.  That would mean that there would be no agreement

14   to compensate the CI in any legitimate manner.

15           THE COURT:  Of course.

16           MR. DAYS:  So what we're asking for is evidence

17   which would be admissible to prove that point.

18           THE COURT:  But there's no way that you believe

19   that that policy or any other policy in the Fresno City

20   Police Department or any other police department or

21   Sheriff's agency or law enforcement agency in this nation

22   has a policy that says you can steal something from

23   somebody else to compensate a confidential informant.

24           MR. DAYS:  No, we would be actually trying to

25   prove the negative, prove that there was no legitimate

1    agreement to compensate the CI.

2            THE COURT:  Yes, you want the agreement, if any.

3            MR. DAYS:  Which we don't believe exists because

4    the agreement was the vehicle.

5            THE COURT:  I understand.

6            MR. DAYS:  And so the lack of existence of the

7    agreement would be admissible under 8037.

8            THE COURT:  As I say, I'm not talking about

9    whether or not it's relevant, what I'm saying is that

10   you're asking for something that you don't believe exists

11   and you're doing it for discovery purposes.

12           MR. DAYS:  That would be evidence, the fact that

13   it doesn't exist.  The fact that no agreement exists would

14   be -- we're asking for the policy and we believe that the

15   policy requires that there be an agreement between the CI,

16   that everything be aboveboard in writing.  Now, the fact

17   that there would not be an agreement per policy is beyond

18   relevance, it's admissible evidence under 8037, the

19   predicate being that there is a policy to compensate

20   CIs and in this situation that policy wasn't followed.

21   Under 8037 the fact that there would be no agreement

22   per the policy would be admissible to prove, it would

23   be admissible to prove that there was no legitimate

24   agreement to compensate the confidential informant.

25           THE COURT:  Your position is that you know that

1    there is a policy and within that policy there exists

2    a statement that police are required to compensate

3    confidential informants.

4         MR. DAYS:  That they would receive compensation,

5    correct, and there would be an agreement, a written

6    agreement.

7         THE COURT:  In other words -- well, I suppose

8    this, how do you know that?  In other words, you can't

9    just say I expect there to be or I'm believing there is,

10   you have to know that there is because if you don't know

11   there is, it's discovery.  If you know there is, then

12   that's exactly what these Rule 17 subpoenas are for;

13   you know there is, you know that that document exists

14   and you're asking for it for evidence in the trial.

15        MR. DAYS:  Your Honor, there cannot be a,

16   there cannot be use of confidential informants without

17   a contractual arrangement between the two.

18        THE COURT:  That's what you believe the policy

19   says?

20        MR. DAYS:  Absolutely.

21        THE COURT:  How do you believe that?  What --

22        MR. DAYS:  Because it wouldn't make any sense

23   otherwise.  I'm not telling the Court that I seen the

24   policy, I haven't seen the policy, but it makes absolutely

25   no sense that an individual would risk his life, work for

1  the government for absolutely no benefit, zero benefit,

2  nothing in writing, no agreement, nothing like that.

3  That defies, in my estimation, common sense.

4         THE COURT:  Okay.  I understand your argument.

5  It's still -- it's discovery.  You can't represent that

6  you know that there is one.  You believe there is, logic

7  tells you there is, but you don't know there is and that's

8  why it is discovery.  And that's why nine and ten, the

9  motion by the City will be granted on nine and ten.

10        With regard to eleven, that is, the identity

11 or any documents which provide the identity of the

12 confidential informants used by Officers Garza and Valdez

13 during the investigation of the defendant.  Is the purpose

14 of this for impeachment?  What is the purpose?

15        MR. DAYS:  Well, your Honor, on this one I

16 will -- I believe the purpose is set forth in -- I don't

17 know if the Court has my ex parte response?

18        THE COURT:  I do, right here.

19        MR. DAYS:  But I would just state that the

20 purpose goes towards what's mentioned on Page 9, Line 25

21 through 1, and we believe information would reveal the

22 matters stated on Page 11, Lines 1 through 6.

23        THE COURT:  All right.  Anything else on 11 and

24 12 because 11 and 12 are very close?

25        MR. DAYS:  No.

1          THE COURT:  I understand the need, the desire,

2     and the relevance, but you can't do it under Rule 17.  So

3     on 11 and 12 the City's motion is granted.

4          With regard to 13, 14, and 15, these are issues

5     requesting information that is involved with an ongoing

6     investigation, do you agree with that?

7          MR. DAYS:  That's what has been reported by

8     the media and I would assume that to be the case, maybe

9     Ms. White can shed some light on that.

10          THE COURT:  Ms. White?

11          MS. WHITE:  Yes, your Honor, as a representative

12     and legal advisor for the Fresno Police Department I can

13     represent to the Court and to Counsel that that case is

14     currently open and under investigation by a couple

15     different agencies.

16          THE COURT:  The real problem is that with 13,

17     14, and 15, we have in another criminal investigation

18     in, obviously, a wholly separate jurisdiction, the state

19     court, and I can't fashion a protective order that could

20     possibly not compromise an ongoing investigation with

21     regard to 12, 13 -- excuse me, 13, 14 and 15.  I don't

22     know how I could do that.

23          MR. DAYS:  I think the Court can do that.  I

24     fully intend on abiding by any order that this Court --

25          THE COURT:  I'm not suggesting you wouldn't,

1     that's not what my statement meant.  I'm not suggesting

2     that you would somehow get clever, I'm not suggesting

3     that at all.

4           MR. DAYS:  It looks like we're at a point where

5     if there wasn't an investigation, then it sounds as if the

6     Court agrees with our position.

7           THE COURT:  No, I haven't gotten to the substance

8     beyond just the City's position of this is an ongoing

9     criminal investigation that might be jeopardized by

10    divulging where they are in that investigation and how

11    far they have come and what information they have because

12    it's not complete.

13          MR. DAYS:  Well, all I can say to that is I don't

14    believe that anything would be compromised.  The Court

15    could draft a protective order that would be very limiting

16    and restrictive.  And I don't believe that simply because

17    there's an ongoing investigation that Mr. Ortega would not

18    be entitled to exculpatory evidence.

19          THE COURT:  Well, I don't think that, I don't

20    think we get over that problem so easily, but you don't

21    know what you're asking for on 13, 14, and 15.  You know

22    that there's an investigation in progress, but you don't

23    know what specific documents you're requesting because

24    you don't know specific documents exist.  You're assuming

25    they do, you're assuming that there are notes that,

1    perhaps, there are confidential reports, memos, perhaps,

2    to the file, but you are not -- you don't have personal

3    knowledge that they exist and that is a requirement of

4    Rule 17; otherwise, it's not -- these are not specific

5    documents being requested for the purpose of defense at

6    trial, but rather you're trying to figure out what they

7    have and that's discovery.

8            MR. DAYS:  Well, the Court could, under Bowman,

9    modify request 13 and 14 and strike the language, and I

10   think this would address the Court's concern, because we

11   know that these exist, could strike the language from 13,

12   Officers Ubaldo Garza and Robert Valdez, and the same

13   thing on number 14 and we know these exist and --

14           THE COURT:  So what are you suggesting, just for

15   the clarity of the record, that request 13 would read how?

16           MR. DAYS:  It would read any and all documents

17   which concern, refer, or relate to the investigation of

18   the operation of the chop shop for buying, selling, or

19   possessing stolen cars or car parts.

20           THE COURT:  Well, they may have 200 of those.

21   Unless you're specific to Officers Garza and Valdez, it's

22   not relevant, but if you are specific with regard to them,

23   then it's clearly an ongoing -- you want information from

24   an ongoing investigation --

25           MR. DAYS:  Yes.

1          THE COURT:  -- in a criminal case in the state

2     court and while you're assuming that they exist, you don't

3     know in what form or specifically what they are until you

4     see them and that's not what Rule 17 is about.

5          MR. DAYS:  Your Honor, but Rule 17 is about, it's

6     my understanding, a defendant is entitled to evidence,

7     items which are relevant and admissible.

8          THE COURT:  And that they know exist and the

9     reason you're getting them is so that you can be prepared

10    for the trial.

11         MR. DAYS:  But we know, we know that the City is

12    conducting an investigation.

13         THE COURT:  Yes, you know it because you read it

14    in the newspaper.  I'm not making judicial notice that the

15    newspaper is correct --

16         MR. DAYS:  And Ms. White --

17         THE COURT:  -- in this or anything else that they

18    report.

19         MR. DAYS:  Ms. White just made a statement to

20    indicate that as well.  So under 803(a), excuse me,

21    8038(a) the information we're requesting, which sets forth

22    the activities of an agency, specifically that that agency

23    is investigating these officers as it relates to running

24    a chop shop and stealing vehicles, that's specific

25    information, that's admissible under 8038(a), under

1   subsection (b), excuse me, under subsection (c) of that

2   same statute or Rule 8038, the investigative findings are

3   admissible.

4           THE COURT:  You don't know they exist.

5           MR. DAYS:  Well, we do know, I know -- well, I

6   have reason to believe, based on news accounts, several of

7   them, as well as statements from the chief of police that

8   the entire narcotics unit has been suspended.  Now, that

9   shows, that tells me that they do exist because these

10  officers, this unit would not be suspended unless there

11  was an investigation and there were findings.

12          THE COURT:  Your logic is not in question.  I

13  understand how you are getting where you are trying to be,

14  but there is a huge difference between what you're arguing

15  now and, for instance, the first issue we took up in

16  request number five, towing, the policy.  We know that

17  the -- everybody knows the towing policy exists.  The

18  issue was whether or not there was relevancy.  There was

19  the issue of whether or not it was probably admissible and

20  we all know that that is right in the center of Rule 17,

21  no question, but this isn't -- and I understand what

22  you're saying.

23          MR. DAYS:  But I can never, I can never -- you

24  know, unless you have actually read the documents.

25          THE COURT:  I know --

1          MR. DAYS:  I understand what the Court is saying.

2          THE COURT:  And I understand your frustration,

3     believe me.  And it's not the first time that I have had

4     this issue where there is that between a rock and a hard

5     place issue and I do know that, but the law is what it is

6     and it has put, it has put Rule 17 in that situation or

7     Rule 17 request in the very situation that frustrates you,

8     I know.

9          MR. DAYS:  Your Honor, what I see happening

10    ultimately -- I mean, we have different positions on this

11    and that's the way that is, but what I see this leading up

12    to is a trial where I subpoena this information for trial,

13    now we are avoiding the issue that we're discussing, and

14    then I'm in a position where I have to ask the Court for

15    a continuance to review the documents which may lead to

16    the need for more time.  I know that there's been an

17    investigation, that there were findings in that

18    investigation and those findings led to the suspension

19    of the unit.

20         THE COURT:  I don't know that.  I don't know

21    that there have been findings.  You're assuming that and

22    I understand how you got to that assumption.

23         MR. DAYS:  Well, I quote the -- the chief of

24    police is quoted in an article dated February 4th, 2009

25    stating that.  I'm not, like, making this up and imagining

1  this, I mean, this is reported information.

2       THE COURT:  I think that, more accurately, what

3  the chief said was that based on the accusations and the

4  concerns and the information that has been brought to his

5  attention, that he felt that it was the proper thing to do

6  to suspend that division and investigate, I think that's

7  what he said.  I don't think he said we have investigated

8  thoroughly, the investigation is over and we have

9  findings.

10      MR. DAYS:  I haven't said that they have

11 investigated thoroughly, but they have investigated.

12 They're not just going to suspend officers without any

13 type of inquiry on their own, I mean, that would violate

14 all sorts of civil issues related to the employment of

15 the officers.  We know that it has to be based on facts

16 and findings, be them preliminary or final; otherwise,

17 the chief wouldn't take that action.

18      THE COURT:  Okay.  I think we just disagree on

19 this and I understand and you have done a good job of

20 laying the record if you're right.

21      MR. DAYS:  Thank you.

22      THE COURT:  Numbers 13, 14, and 15, the Motion to

23 Quash, granted.

24      On 16 and 17, these are the personnel files

25 of the officers; one is Officer Garza and the other is

1    Officer Valdez.   There's been a statement that was filed

2    by the AUSA, Ms. Escobar, indicating she is not planning

3    on calling those officers.   The personnel files, the in

4    camera inspection, generally, what we do on those types

5    of requests are because you are looking for impeachment

6    issues, I believe, is that what --

7              MR. DAYS:   As well as 404(b) on this.

8              THE COURT:   All right.   And if that be the case

9    and they're not calling them to prove their case in chief.

10             MR. DAYS:   Well, that would only address one

11   officer.   She's only making that, the U.S. Attorney is

12   only making that claim as it relates to Officer Garza.

13             THE COURT:   Garza, that's right.   So that's

14   number 16.

15             MR. DAYS:   Correct.

16             THE COURT:   So what about number 17, Ms. Escobar,

17   are you planning on calling Officer Valdez in your case in

18   chief?

19             MS. ESCOBAR:   Your Honor, I don't know.   This

20   was Ms. Servatius' case and then I did not, I have not

21   responded to the subpoena.   I think Mr. -- well, you know,

22   I can't tell you.

23             THE COURT:   Don't you agree that if you are

24   planning on calling Officer Valdez I should have an in

25   camera inspection of --

1    MS. ESCOBAR:  Yes, I think that would

2  determine --

3    THE COURT:  How can you find out whether or not

4  you're planning on calling him?

5    MS. ESCOBAR:  Let me call the DEA agent, it was a

6  DEA case.

7    MS. WHITE:  I can deal with point of

8  clarification, item number eight.

9    THE COURT:  All right.

10    MS. WHITE:  The issue with the itemized

11  information, the Fresno County jail actually obtained --

12  has that actual itemized list.

13    THE COURT:  So you don't have it?

14    MS. WHITE:  So we don't have that, specifically.

15  I'm giving defense counsel everything we have that's

16  associated with the booking of Mr. Ortega, but as far

17  as itemized list at the time he was booked, I just want

18  to make clarification --

19    THE COURT:  Sure, you're not required, he's not

20  asking you to go to the County and get something he knows.

21  That's fine, thanks.

22    MS. WHITE:  Thank you.

23    MS. ESCOBAR:  Your Honor, I did speak to the case

24  agent for DEA, he indicated that Detective Valdez, who's

25  not been implicated in any of these allegations, but that

1  he was the -- he's a potential witness, he was the handler

2  of the informant.

3        THE COURT:  All right.

4        MS. ESCOBAR:  Detective Garza was, if anything,

5  on the periphery.  He's not likely a witness, but out of

6  an abundance of caution I would suggest they are potential

7  witnesses, the two, and the Court should perhaps review in

8  camera to determine if there's anything in the personnel

9  files that could be considered exculpatory.

10       THE COURT:  Then on 16 and 17 the request by the

11 City is denied without prejudice and the Court will review

12 both the personnel files in camera inspection and then

13 I'll issue an order in that regard, I just don't know

14 right now.

15       MR. DAYS:  I understand.

16       MS. WHITE:  I have them with me, your Honor.

17       THE COURT:  Come on back, we'll look at them.

18       MR. DAYS:  One last thing, your Honor.

19       THE COURT:  Yes.

20       MR. DAYS:  Very briefly.  There's a sealing,

21 there was a motion to seal that was filed and an order

22 following that.

23       THE COURT:  Whose motion are you talking about?

24       MR. DAYS:  The Government's.  There's a couple of

25 issues; one, I think the Court's protective order is going

1    to deal with any concerns regarding information responsive

2    to this subpoena.  I don't believe that there's any

3    factual basis provided that justifies this sealing order,

4    particularly given the fact that the Court is going

5    to issue a protective order.  It's extremely broad.  It's

6    not --

7              THE COURT:  What is it you don't want sealed?

8              MR. DAYS:  I don't want to be strapped where I

9    can't file a document that relates to the investigation

10   that's public record that the chief of police is

11   discussing out in public.  The chief can talk about it,

12   I can't file a document about what the chief is talking

13   about.  This is all public information, except for the

14   information that the Court is about to provide us per

15   the protective order.

16             THE COURT:  How about this suggestion, how about

17   whatever it is you want to file just send it the day

18   before you file it; in other words, when it is ready, you

19   don't have to do anything special, just let the Government

20   look at it, the AUSA, if she has an issue about its being

21   sealed or not, let me know.  My guess is if we do it one

22   time, if we do that one time, we'll be able to define

23   exactly what the issue is here.

24             MR. DAYS:  That's part of my problem, what is the

25   issue?  You look at this motion and what it really comes

1    down to is she's asking for a sealing order because she

2    says that the issue is sensitive in nature.  She doesn't

3    have standing to ask for the sealing order.

4          THE COURT:  Actually, I'll tell you how I read

5    it.  I read it meaning that if you come across things

6    that are possibly going to interfere with the ongoing

7    investigation, that we can prevent that by, and not in

8    any way prejudice you or your client, by having it sealed.

9    But having said that, I understand what you're saying and

10   that's why I'm suggesting if you want to file something

11   and she believes that it is sensitive and should be

12   sealed, I think if you do that one time, go through

13   that exercise one time and you bring the dispute to me,

14   we can work it out, and then at that point when we have

15   something concrete, then we can define what that means.

16         MR. DAYS:  Well, the problem is is that's

17   speculation.

18         THE COURT:  What?

19         MR. DAYS:  The U.S. attorney is assuming, she

20   hasn't seen any of this information.

21         THE COURT:  That's why I'm suggesting -- it may

22   be, that's why I'm suggesting that if you show her, go

23   through that exercise once and if there's a dispute and

24   she says, "No, I really think that should be sealed" and

25   you say, "I believe it should not be sealed," and we have

1   a quick, confidential, on-the-record hearing, then at that

2   point she'll know that she's speculating or she'll know

3   that she's not and you'll know that she's not and we'll

4   know why and then that way we can define the sealing.  It

5   may not come to a fruition where it's anything that needs

6   to be sealed, so I just think that's a practical way of

7   handling it.  I'm not suggesting you're wrong.  I just

8   think that rather than try to nail jello onto the tree,

9   let's get something solid here and take a look.

10          MR. DAYS:  Well, it just seems like something

11  solid should occur prior to a restriction.  I mean, it's

12  just pure speculation.  No facts have been offered to the

13  Court to justify we're doing it out of a probability that

14  may or may not exist without any information being

15  defined.

16          THE COURT:  Well, part of the problem is is the

17  cart before the horse, the horse before the cart because

18  once you file something of a sensitive nature that,

19  frankly, nobody else knows except the officer that's

20  investigating, it's out, and then it's too late.  So --

21          MR. DAYS:  Well, that exists in every single case

22  has the potential of sensitive information.  I could just

23  tell the Court that I would abide by -- I can't imagine me

24  receiving anything that's not public information.  Every

25  single thing that the Court has --

1          THE COURT:  How about this then, how about this,

2    let's be more specific with the sealing order and that is

3    that anything that is considered not public information;

4    in other words, has not been disseminated to the public,

5    that needs to be cleared with one another.  And if there's

6    an issue, come to me, and we'll resolve it, and we can do

7    it in no time.

8          MR. DAYS:  I prefer that.

9          THE COURT:  That's what we'll do.  That's the

10   order.  I think that takes care of it all.

11         What's the situation, next hearing date, what are

12   we doing?

13         MR. DAYS:  I was going to ask the Court, I

14   haven't spoken with Ms. Escobar about this, but I was

15   going to ask the Court that we set a status conference

16   for April the 10th.

17         MS. ESCOBAR:  That's fine, your Honor.

18         THE COURT:  All right.  And what do you expect to

19   do then?

20         MR. DAYS:  Well, my hope is -- I'm trying to

21   get some additional information.  I'll have reviewed,

22   hopefully, that information, as well as the information

23   that the, hopefully the Court is going to provide me in

24   response to this hearing, and at that time I'll be in a

25   position to inform the Court where I'm at and whether or

1   not there's further investigation or we're ready to go

2   ahead and set a trial date, I just really don't know at

3   this point.

4           THE COURT:  April, what did you say?

5           MR. DAYS:  April 10th.

6           THE COURT:  All right, April 10.  What time would

7   you like?

8           MR. DAYS:  9:00 is fine.

9           THE COURT:  Ms. White.

10          MS. WHITE:  With exclusion of time for

11  investigation.

12          THE COURT:  Any objection?

13          MR. DAYS:  No.

14          THE COURT:  Granted for further investigation.

15          MR. DAYS:  Thank you.

16          MS. WHITE:  Thank you.

17      (The proceedings were concluded at 11:06 a.m.)

18

19  I, CONNIE SILVA, Certified Reporter, do hereby certify the

20  foregoing transcript as true and correct.

21

22  Dated:  03/19/2009          /s/ Connie Silva_
                                CONNIE SILVA, CSR
23

24

25